## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | | |
|---|---|---|
| **EARNEST SHIELDS** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO. 1:19-cv-575** |
| | § | |
| **TEXAS WINDSTORM INSURANCE** | § | |
| **AGENCY, and WRIGHT NATIONAL** | § | |
| **FLOOD INSURANCE COMPANY,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |

## NOTICE OF REMOVAL

NOW INTO COURT, through undersigned counsel, comes Defendant Wright National

Flood Insurance Company ("Wright" or "Defendant"), a Write-Your-Own ("WYO") Program

carrier participating in the United States Government's National Flood Insurance Program

("NFIP") pursuant to the National Flood Insurance Act of 1968, as amended,[1] appearing herein

in its "fiduciary"[2] capacity as the "fiscal agent of the United States,"[3] and files this Notice of

Removal, removing the state court action entitled "*Earnest Shields v. Texas Windstorm

Insurance Agency, and Wright National Flood Insurance Company*," Case Number B180248-C,

pending the District Court of Jefferson County, Texas, 60th Judicial District, to the United States

District Court for the Eastern District of Texas, Beaumont Division.  An Addendum containing

---

[1] 42 U.S.C. § 4001 *et seq*.

[2] 44 C.F.R. § 62.23(f).

[3] 42 U.S.C. § 4071(a)(1); *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998); *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 386 (5th Cir. 2005).

the documents and information required by Local Rule CV-81 is attached to this Notice as **Exhibit A**.  In support of this Notice of Removal, the Defendant represents as follows:

### I.

On or about August 23, 2019, Plaintiff Earnest Shields ("Shields" or "Plaintiff") filed the instant action styled "*Earnest Shields v. Texas Windstorm Insurance Agency, and Wright National Flood Insurance Company*," bearing Case Number B-0204369, pending the District Court of Jefferson County, Texas, 60th Judicial District ("the State Court Action").  A true copy of the Plaintiff's Original Petition filed in the State Court Action is contained in the state court record filed herewith as **Exhibit B**.  A true copy of the Citation and Plaintiff's First Amended Petition ("Amended Petition") filed in the State Court Action and served upon the Defendant on October 17, 2019, is filed herewith as **Exhibit C** in accordance with 28 U.S.C. §1446(a).  A true copy of all pleadings on file with the District Court of Jefferson County, Texas, 60th Judicial District is filed herewith as **Exhibit B**, in accordance with Local Rule CV-81.

### II.

For the reasons that follow, and with the consent of co-defendant Texas Windstorm Insurance Association (attached hereto as **Exhibit D**),[4] Wright hereby removes this case from the District Court of Jefferson County, Texas, 60th Judicial District to the United States District Court for the Eastern District of Texas, Beaumont Division, pursuant to 42 U.S.C. § 4072; 44 C.F.R. pt. 61, app. A(1), art. VII(R) and IX; and 28 U.S.C. §§ 1331, 1441 and 1446.

### A.     REVIEW OF THE PLAINTIFF'S AMENDED PETITION

1.     This is an action on a federal Standard Flood Insurance Policy ("SFIP") issued by

---

[4] Texas Windstorm Insurance Association is incorrectly named as "Texas Windstorm Insurance Agency" in the caption of the Plaintiff's Original Petition and First Amended Petition.

a Write Your Own ("WYO") Program carrier participating in the United States Government's National Flood Insurance Program ("NFIP") pursuant to the National Flood Insurance Act of 1968. A true copy of the Flood Declarations Page of the subject SFIP (Policy Number 41 1150707652 06) issued to Shields is attached for reference as **Exhibit E**.  Plaintiff seeks a recovery under the SFIP for damages allegedly resulting from an alleged flood loss that reportedly occurred on or about September 4, 2017 at the Plaintiff's property located at 1621 Duff Drive, Port Arthur, Texas 77642.

2.      The Plaintiff's First Amended Petition alleges in part as follows:

(i)      "Plaintiff is the owner of a Texas Homeowners Insurance Policy (hereinafter referred to as "the Policy"), which [w]as issued by Defendants";

(ii)      "Defendants sold and issued Plaintiff the Policy insuring the property against damages caused by hail, windstorm and other covered perils";[5]

(iii)      "During the effective policy period, Plaintiff owned real property with improvements located at 1621 DUFF DR., PORT ARTHUR, TX 77642, located in Jefferson County, Texas (hereinafter referred to as the 'Property')";

(iv)      "During the effective policy period, the Property described above sustained severe damages to the roof due to the direct force of wind and hail. As a result, the inside of the Property sustained resulting water damage from storm created openings in the roof.";

(v)      "Plaintiff duly notified Defendants of the damage sustained and asked that Defendants pay for the damages to the Property and other damages covered by the terms of the Policy."

---

[5] The only Policy issued by Wright to Shields is the federal Standard Flood Insurance Policy (Policy Number 41 1150707652 06) referenced above. *See* Flood Declarations Page filed herewith as **Exhibit E**.

(vi)    "Defendants then assigned Plaintiff Claim No. 17 0022775 (hereinafter 'the Claim') and assigned an adjuster, agent, representative of Defendants to perform a site inspection of the damages and evaluate and process the Claim";[6]

(vii)    "Defendants improperly adjusted Plaintiff's claim and failed to conduct a reasonable and thorough investigation of the covered damages. Without limitation the report misrepresented the cause of, scope of, and cost to repair the damage to Plaintiffs home, as well as the amount of insurance coverage for Plaintiffs losses under the Policy. Defendants made these and other false representations to Plaintiff, either knowingly or recklessly. Defendants made these false representations with the intent that Plaintiff act in accordance with the misrepresentations. Plaintiff relied on their misrepresentations, including but not limited to, those regarding the cause of, scope of, and cost to repair the damage to Plaintiffs property. Plaintiff has been damaged as a result of that reliance.";

(viii)    "The inspection of Plaintiffs Property on SEPTEMBER 15, 2017 was brief, substandard and inadequate. The inspection report failed to include all the damages that were observed during the inspection and undervalued the damages and ultimately denied/underpaid the Claim. Despite the existence of obvious and easily identifiable damages, the report claimed there were minimal storm related damages and the condition of the roof was misrepresented as well as the cause of water intrusion and interior damages. Defendants' liability for the extension of further coverage and further payment was reasonably clear.";

(ix)    "Plaintiff was entitled to receive benefits that were covered by the insurance policy.";

---

[6] The Claim Number referenced in the Amended Petition is the Claim Number that Wright assigned to Plaintiff's claim under the SFIP. *See* **Exhibit F** (Denial of Claim letter dated December 18, 2017 regarding Claim Number 17 0022775); **Exhibit G** (Denial of Claim letter dated January 25, 2018 regarding Claim Number 17 0022775).

(x)      "However, Defendants performed an outcome-oriented investigation of Plaintiff's Claim, which resulted in a biased, unfair and inequitable evaluation of Plaintiff's losses on the Property.   Defendants has delayed payment to Plaintiff for necessary and covered Property damages under the Policy.   To date, Defendants has yet to make a full payment on the Claim.";

(xi)      "Plaintiff was forced to hire his own representative to inspect and evaluate the obvious damages to the Property that Defendants deliberately ignored to avoid payment on the Claim.   Additionally, as a result of Defendants' wrongful acts and omissions, Plaintiff was forced to retain an attorney to prosecute the claim for insurance benefits to which he is entitled.";

(xii)      "Plaintiffs experience is not an isolated case. The wrongful acts and omissions Defendants committed in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of Defendants with regards to handling these types of claims.   Defendants' entire claim process is unfairly designed to reach favorable outcomes for the companies at the expense of the policyholder.";

(xiii)      "As set forth below, Defendants failed to comply with the Policy, the Texas Insurance Code and Texas law in handling Plaintiffs Claim by:

a. Wrongfully denying Plaintiffs Claim for full repairs to the Property even though the Policy provides coverage for losses such as those Plaintiff is claiming;[7]

b. Underpaying some of Plaintiffs Claim by not providing full coverage for damages sustained to the Property;

c. Improperly and inadequately scoping the damages to the Property during Defendants' investigation; and

d. Continuing to delay in the payment of damages to the Property, including the roof and interior.";

_____

[7] The Denial of Claim letters issued by Wright with respect to Plaintiff's claim under the SFIP (Claim Number 17 0022775) are filed herewith for reference as **Exhibit F** (Denial of Claim letter dated December 18, 2017) and **Exhibit G** (Denial of Claim letter dated January 25, 2018).

(xiv)  "Additionally, Defendants breached its contractual obligation to Plaintiff by continuing to refuse to adequately compensate Plaintiff for the damages to the Property pursuant to the terms of the Policy. Notably, Defendants refused to pay for the proceeds of the Policy despite the fact pre-suit demand for payment in the amount sufficient to cover the damage to the Property was made.";

(xv)  "Plaintiff complied with all obligations under the Policy, and all conditions precedent to recovery upon the Policy are satisfied.";

(xvi)  "Defendants continues to delay in the payment of the damages to the Property despite Plaintiffs request. Accordingly, Plaintiff has not been paid and/or paid in full for the damages to the Property.";

(xvii)  "As a result of Defendants' wrongful acts and omissions, Plaintiff was forced to retain legal counsel to represent Plaintiff with respect to these causes of action."

**Exhibit C**, Amended Petition at ¶¶ 8-24.

3.      The Plaintiff's First Amended Petition purports to allege five (5) causes of action. **Exhibit C**, Amended Petition at ¶¶ 25-54.

4.      The first claim is entitled "Breach of Contract."  Plaintiff alleges that "Defendants have a contract of insurance with Plaintiff"; that "Defendants breached the terms of that contract by wrongfully denying and/or underpaying the Claim and Plaintiff was damaged thereby"; that "Due to Defendants' breach of the contract terms and continual denial/underpayment of this Claim, Plaintiff continues to sustain damages to his Property"; that "Defendants' breach proximately caused Plaintiffs injuries and damages"; and that "Plaintiff has been required by the actions of Defendants to retain the services of undersigned counsel and have agreed to pay undersigned counsel reasonable attorney's fees." **Exhibit C**, Amended Petition at ¶¶ 25-28.

5.      The second claim is entitled "Unfair Settlement Practices or Dece[p]tive Acts or Practices."  Plaintiff alleges that "Defendants are required to comply with Chapter 541 of the Texas Insurance Code"; that "Defendants are liable for its unfair and deceptive acts as defined by TEX. INS. CODE § 541.002."; that "Defendants violated TEX. INS. CODE § 541.060(a) by engaging in unfair settlement practices during the handling of the claim. All of Defendants' violations are actionable pursuant to TEX. INS. CODE §541.151"; that "Defendants engaged in the following unfair settlement practices: a. Pursuant to TEX. INS. CODE § 541.060(a)(1), misrepresenting to Plaintiff material facts or Policy provisions relating to the coverage at issue by indicating that the damage to the Property was not covered under the Policy even though it was reasonably clear that the damage was caused by a covered peril.  b. Pursuant to TEX. INS. CODE § 541.060(a)(2)(A), failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Claim, even though Defendants' liability under the Policy was reasonably clear. Specifically, Defendants failed to make an attempt to settle the Claim fairly despite the fact that Defendants were aware of its liability to Plaintiff under the Policy.  c. Pursuant to TEX. INS. CODE § 541.060(a)(I), failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for defendants' denial of the Claim or offer of a compromise settlement of the Claim. Specifically, Defendants failed to offer Plaintiff adequate compensation for damages to the Property without reasonable explanation as to why full payment was not being made.  d. Pursuant to TEX. INS. CODE § 541.060(a)(4), failing within a reasonable time to affirm or deny coverage of the Claim to Plaintiff or to submit a reservation of rights. Specifically, Plaintiff did not receive a timely, written indication of acceptance or rejection regarding the entire claim. Pursuant to TEX. INS. CODE §541.060(a)(7), refusing to pay Plaintiffs Claim without conducting a reasonable

investigation with respect to the Claim. Defendants' outcome-oriented investigation of the Claim resulted in unfair evaluation of the Damage to Plaintiffs Property"; that "Each of the foregoing unfair settlement practices was committed with knowledge by Defendants and was a producing cause of Plaintiffs injuries and damages"; that "Specifically, Defendants violated the Texas Deceptive Trade Practices Act ("DTPA") in the following respects: 1. Defendants represented that the agreement confers or involves rights remedies, or obligations which it does not have, or involve, or which are prohibited by law.  2. Defendants failed to disclose information concerning goods or services which was known at the time of the transaction when such failure to disclose such information was intended to induce the consumer into a transaction that the consumer would not have entered into had the information been disclosed.  3. Defendants, by accepting insurance premiums but refusing without a reasonable basis to pay benefits due and owing, engaged in an unconscionable action or course of action as prohibited by §17.50(a)(1)(3) of the DTPA, in that Defendants took advantage of Plaintiffs' lack of knowledge, ability, experience, and capacity to a grossly unfair degree, that also resulted in a gross disparity between the consideration paid in the transaction and the value received, in violation of Chapter 541 of the Texas Insurance Code"; that "Defendants knowingly committed the acts complained of"; and that "As such, Plaintiff is entitled to exemplary and/or treble damage pursuant to the DTPA and TEX. INS. CODE § 54 1.152(04)." **Exhibit C**, Amended Petition at ¶¶ 30-36.

6.      The third claim is entitled "Misrepresentation of Insurance Policy Violations." Plaintiff alleges that "Additionally, Defendants made misrepresentations about Plaintiffs insurance Policy and Claim in violation of TEX. INS. CODE § 541.061" and "All of Defendants' violations are actionable pursuant to TEX. INS. CODE § 541.151"; that "Defendants engaged in deceptive insurance practices by making an untrue statement of material fact in violation of

§541.061(1)" that "Specifically, Defendants misrepresented the true scope and amount of the Claim despite the existence of obvious and easily identifiable property conditions warranting the extension of further coverage under the Policy"; and that "Each of the foregoing unfair settlement practices was committed with knowledge by Defendants and was a producing cause of Plaintiffs injuries and damages." **Exhibit C**, Amended Petition at ¶¶ 38-40.

7.      The fourth claim is entitled "Prompt Payment of Claims Violation."  Plaintiff alleges that "Plaintiffs Claim is a claim under the insurance Policy issued by Defendants, of which Plaintiff gave Defendants proper notice. As set forth more fully below, Defendants' conduct constitutes a violation of the Texas Prompt Payment of Claims Statute, which is made actionable by TEX. INS. CODE § 542.060"; that "Specifically, Defendants violated the Prompt Payment of claims provisions of TEX. INS. CODE § 542 by: a. Failing to acknowledge receipt of Plaintiffs Claim, commence investigation of the Claim, and request from Plaintiff all items, statements, and forms that they reasonably believed would be required within the applicable time constraints, as described above, which constitutes a non-prompt payment of claims and a violation of TEX. INS. CODE § 542.055; b. Failing to notify Plaintiff in writing of its acceptance or rejection of the full and entire Claim within the applicable time constraints provided by TEX. INS. CODE § 542.056; and c. Delaying payment of the Claim following Defendants' receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided by TEX. INS. CODE § 542.058. Defendants delayed full payment of the Claim and, to date, Plaintiff still has not receive full payment on the Claim." **Exhibit C**, Amended Petition at ¶¶ 42-43.

8.      The fifth claim is entitled "Breach of Duty of Good Faith and Fair Dealing / Bad Faith."  Plaintiff alleges that "Since Plaintiff initially presented the Claim to Defendants, the

liability of Defendants to pay the full Claim with the terms of the Policy was reasonably clear. The damage to Plaintiff's home was not apparent until after the loss made the basis of Plaintiff's insurance Claim.  It is no coincidence that there was no apparent windstorm, rain, and/or hail damage prior to the loss, and significant damage just after.  The wind damage to the property was at all times reasonably clear during Defendants' claim investigation, such that any adjuster or insurance carrier acting in good faith would know or should have known to acknowledge and accept coverage for such damages. Instead, Defendants purposely failed to acknowledge and accept full coverage for reasonably clear wind damage.  Alternatively, Defendants were grossly negligent in failing to acknowledge and accept full coverage for the reasonably clear wind damages to the property"; that "As a result of Defendants' outcome-oriented investigation, Defendants continues to refuse to pay Plaintiff in full for the Claim"; that "Defendants denied coverage and delayed payment for the full amount of Plaintiff's claim when it had no reasonable basis for doing so.  Defendants knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, and its failure, as set forth above, to adequately and reasonably investigate and evaluate Plaintiff's Claim, constitutes a breach of the duty of good faith and fair dealing"; that "Defendants and Plaintiff are in a special relationship, created by the insurance contract, giving rise to a duty on the part of Defendants to deal fairly and, in good faith with Plaintiff, who is the insured"; that "Defendants breached its duty of good faith and fair dealing by: a. Failing to provide a reasonable basis for denial or underpayment of the Claim; and/or, b. Failing to determine whether there was a reasonable basis for denial or delay of the Claim …"; that "Defendants systematically and routinely denies or underpays valid claims to the detriment of its policyholders. As set forth above, the wrongful acts and omissions Defendants committed in this case, or similar acts and omissions, occur with such frequency that

they constitute a general business practice of Defendants with regard to handling of these types of claims"; that "By virtue of its systematic wrongful denials, Defendants compel its policyholders to seek legal representation and initiate and maintain a suit to recover an amount due under the policy by offering nothing or substantially less than the amount that will be recovered by a suit brought by the insured" that "Defendants failed to adopt or implement reasonable standards for prompt investigation of claims arising under its policies or is deliberately adopting standards calculated to maximize its profit to the detriment of its policyholders. Defendants are knowingly directing its personnel, agents and/or adjusters to undervalue or underpay valid claims"; and that "Defendants knowingly committed the act of denying and/or underpaying claims without a reasonable basis, therefore, Plaintiff is entitled to actual and exemplary damages at law." **Exhibit C**, Amended Petition at ¶¶ 45-55.

9.      Plaintiff alleges that he "sustained the following economic / actual damages as a result of the actions and/or omissions of Defendants described hereinabove: (a) Out-of-pocket expenses; (b) Loss of the 'benefit of the bargain.'  (c) Diminished or reduced market value.  (d) Costs of repairs.  (e) Remedial costs and/or costs of completion.  (f) Reasonable and necessary engineering or consulting fees."  **Exhibit C**, Amended Petition at ¶ 57.

10.     In a section of the Amended Petition entitled "Damages", Plaintiff alleges as follows:

(i)      "Plaintiff would show that all the aforementioned causes of action, taken together and singularly, establish the producing causes of the damages sustained by Plaintiff."

(ii)     "Plaintiffs damages have yet to be fully addressed or repaired since the incident,

causing further damage to the Property and causing undue burden to Plaintiff.  Upon trial of this case, it will be shown that these damages are a direct result of Defendants' improperly handling of the Claim in violation if the laws set forth above."

(iii)    "For the breach of contract, Plaintiff is entitled to regain the benefit of the bargain, which is the amount of the Claim, together with attorneys' fees."

(iv)    "As a result of the noncompliance with the Texas Insurance Code Unfair Settlement Practices provisions, Plaintiff is entitled to actual damages, which includes the loss of the contractual benefits that should have been paid pursuant to the Policy, mental anguish, court costs, and attorneys' fees. For Defendants' knowing conduct in violating these laws, Plaintiff respectfully requests treble damages pursuant to TEX. INS. CODE § 541.152."

(v)    "Pursuant to TEX. INS. CODE § 542.060, as a result of the noncompliance with the Texas Insurance Code Prompt Payment of Claims provision, Plaintiff is entitled to the entire amount of the Claim, eighteen (18) percent interest per annum on the amount of the Claim and reasonable and necessary attorneys' fees."

(vi)    "For the breach of the common-law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from Defendants' breach, exemplary damages and damages for emotional distress."

(vii)    "As a result of the necessity in engaging the service of an attorney to prosecute this Claim, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas."

12

(viii)  "Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiff is seeking only monetary relief of $75,000.00, including damages of any kind, penalties, costs, expenses, prejudgment interest, and attorneys' fees."

**Exhibit C**, Amended Petition at ¶¶ 59-65.

11.  In the section of the Amended Petition entitled "Jury Demand", Plaintiff "requests that all causes of action alleged [in the Amended Petition] be tried before a jury[.]"**Exhibit C**, Amended Petition at ¶ 69.

12.  In the section of the Amended Petition entitled "Prayer", Plaintiff demands "final judgment be rendered for Plaintiff as follows: 1) Judgment against Defendants for actual damages, including mental anguish, in an amount to be determined by the jury; 2) Statutory penalties; 3) Treble damages; 4) Exemplary and punitive damages; 5) Prejudgment interest as provided by law; 6) Post-judgment interest as provided by law; 7) Attorneys' fees; 8) Costs of this suit; and 9) Such other and further relief to which Plaintiff may be justly entitled."

## B.  THE FEDERAL GOVERNMENT'S RULES AND THE WYO PROGRAM CARRIER'S ROLE

13.  Congress underwrites all operations of the NFIP through the United States Treasury.  This includes appropriations for both the adjustment of claims and the payment of those claims.  Similarly, Congress has conferred "rule-making power upon the agency created for carrying out its policy," specifically the Federal Emergency Management Agency ("FEMA"). *See Muncy v. Selective Ins. Co. of Am.*, No. CIV.A. 0:05CV220-HRW, 2007 WL 2229224, at *1 (E.D. Ky. July 31, 2007).

14.  Congress delegated rulemaking authority exclusively to the Federal Government to determine the conditions of insurability and to write the flood policy.  *See* 42 U.S.C. § 4013(a).  Decades ago, FEMA exercised its authority under § 4013(a) to adopt, by regulation, the

terms and conditions of insurability, including the Standard Flood Insurance Policy, which itself is a federal regulation published at 44 C.F.R. pt. 61, app. A(1).

15.     Pursuant to Congressional authorization found at 42 U.S.C. § 4071(a)(1), FEMA uses WYO Companies like Wright to aid it in its statutory duty to administer the NFIP.  *See also* 42 U.S.C. § 4081(a) (permitting FEMA's Director to enter into arrangements with private insurers in order to make use of their "facilities and services"); 44 C.F.R. § 62.23(a)-(d) (establishing WYO program to permit private insurers to sell and administer SFIPs).

16.     At all pertinent times, Wright, as a WYO Program carrier, was authorized to issue and administer the SFIP, which is a federal regulation found at 44 C.F.R. pt. 61, app. A(1), on behalf of the Federal Government pursuant to a "Financial Assistance/Subsidy Arrangement" between itself and FEMA.  These forms of the flood policy are incorporated into the Code of Federal Regulations at 44 C.F.R. § 61.13(a).  "[T]he exact terms and conditions of NFIP policies and eligibility for federal flood insurance are dictated by federal law."  *Spong v. Fid. Nat. Prop. & Cas. Ins. Co.*, 787 F.3d 296, 299 (5th Cir. 2015).

17.     "[I]n the federal flood insurance scheme," at all pertinent times Wright is and was "a conduit" and "intermediary for the Government."  *Spong, supra*, 787 F.3d at 309-310 (noting that plaintiffs "applied for a flood insurance policy that was part of a federal program, with the understanding that covered claims would be paid with federal funds.").

18.     Wright cannot waive or alter or amend any of the provisions of the SFIP. *See* 44 C.F.R. § 61.13(d); 44 C.F.R. pt. 61, app. A(1), art. VII(D).

19.     At all pertinent times, Wright's role as a WYO Company is and has been to market, sell, administer, and adjust claims under SFIPs that it is authorized to issue on behalf of the Federal Government, and it does so in its "fiduciary" capacity as "fiscal agent of the Federal

Government." *See* 44 C.F.R. §§ 62.23(d), (f), and (g); 42 U.S.C. § 4071(a)(1).

20.     Since 1983, WYO Companies have issued SFIPs in their names, collecting premiums in segregated accounts from which they pay claims and make necessary refunds under those policies. *See* 44 C.F.R. §§ 61.13(f), 62.23(a).  Premiums collected from policyholders by WYO Companies are, after deduction of the companies' fees and administrative costs, deposited in the National Flood Insurance Fund in the United States Treasury. *See* 42 U.S.C. § 4017.

21.     The National Flood Insurance Program, the Standard Flood Insurance Policy, and Write-Your-Own Companies (including Wright) participating in the National Flood Insurance Program are all governed exclusively by federal law:

> Since the flood insurance program is a child of Congress, conceived to achieve policies which are national in scope, and since the federal government participates extensively in the program both in a supervisory capacity and financially, it is clear that the interest in uniformity of decision present in this case mandates the application of federal law.

*West v. Harris*, 573 F.2d 873, 881 (5th Cir. 1978) (citation omitted).

22.     As codified in the Code of Federal Regulations, the SFIP expressly states that "This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, et seq.), and Federal common law."  44 C.F.R. pt. 61, app. A(1), art. IX.

23.     Thus, the NFIP, the SFIP, and WYO Program Carriers participating in the NFIP (including Wright) are governed exclusively by federal law, not state law.

**C**.     **GROUNDS FOR REMOVAL: FEDERAL QUESTION JURISDICTION**

24.     42 U.S.C. § 4072 confers "original exclusive jurisdiction" upon this Court over all claims involving administration of the SFIP, including claims for payment under a SFIP.  This

original exclusive jurisdiction encompasses all claims relating to the provision of flood insurance under the NFIA regardless of whether they are pled in contract, tort or other state statutory remedies, and regardless of whether the named defendant is FEMA or a WYO Program Carrier like Wright.

25.     In another case involving similar claims against a WYO Program Carrier alleging breach of a flood insurance contract and state-law claims for failure to pay the full amount of benefits owed under a SFIP, the Southern District of Texas noted as follows:

> Federal courts have original, exclusive jurisdiction over a breach of contract suit against the Director of the Federal Emergency Management Agency ("FEMA") seeking payment of additional flood insurance benefits under a Standard Flood Insurance Policy ("SFIP"). 42 U.S.C. § 4072. Section 4072 ("Adjustment and payment of claims; judicial review; limitations; jurisdiction"), provides,
>
>> In the event the program is carried out as provided in section 1340 [42 U.S.C. § 4071], the Director shall be authorized to adjust and make payment of any claims for proved and approved losses covered by flood insurance, and upon the disallowance by the Director of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the Director, may institute an action against the Director on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.
>
> Furthermore, effective December 31, 2000 an amendment to the SFIP added the following language to Article IX ("What Law Governs") of the standard flood insurance policy: "This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the national Flood Insurance Act of 1968, as amended (42 U.S.C. § 4001, *et seq.*), and Federal common law." 44 C.F.R. Part 61, App. A. Art. IX (2001).
>
> Several Circuit Courts of Appeals have held that § 4072 also applies to lawsuits against private insurers who issue SFIPs under the Write Your Own ("WYO") program. *See Wright v. Allstate Ins. Co.*, 415 F.3d 384, 389 (5th Cir. 2005); *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 947 (6th Cir. 2002); *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 166–67 (3d Cir. 1998).

*Jianhua Ling v. Farmers Ins. Grp.*, No. CV H-16-2961, 2017 WL 451222, at *6, n. 1 (S.D. Tex. Feb. 2, 2017).

26.     The United States District Court for the Eastern District of Texas, Beaumont Division has original exclusive jurisdiction over the instant litigation arising out of the NFIP pursuant to 42 U.S.C. § 4072 and 44 C.F.R. pt. 61, app. A(1), art. VII(R), which vests the United States District Court for the district in which the insured property is located with exclusive subject-matter jurisdiction, without regard to the amount in controversy, over cases arising from the handling of a SFIP claim under the NFIP.  *See Ferraro v. Liberty Mut. Fire Ins. Co.*, 796 F.3d 529, 531 (5th Cir. 2015).

27.     With respect to the claims alleged against Wright, the payment that Plaintiff seeks in this lawsuit would constitute a direct charge on the public treasury, and would be binding upon the Federal Government.  *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 386 (5th Cir. 2005); 44 C.F.R. § 62.23(f).

28.     This Court therefore has original exclusive jurisdiction over the instant claims alleged against Wright pursuant to 42 U.S.C. § 4072, and 44 C.F.R. pt. 61, app. A(1), art. VII(R).

29.     Moreover, this Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  *See Spong v. Fid. Nat. Prop. & Cas. Ins. Co.*, 787 F.3d 296, 303 (5th Cir. 2015) ("This is a claim for benefits under a federal flood insurance policy over which the district court had federal-question jurisdiction." (citing *Borden v. Allstate Ins. Co.,* 589 F.3d 168, 172 (5th Cir. 2009)).

30.     The meaning and application of the NFIA and the administration of the NFIP are substantial issues of federal interest that involve the construction and effect of federal laws and

regulations.  As alleged, Plaintiff's Amended Petition asserts a claim for breach of a federal SFIP

and involves Wright's adjustment and handling of Plaintiff's claim under a SFIP – matters that

raise substantial federal questions under the NFIA and its supporting regulations, which creates

federal question jurisdiction under 28 U.S.C. §§ 1331 and 1441.

31.     The Fifth Circuit has instructed that the "NFIA preempts claims-handling causes

of action and claims." *Spong v. Fid. Nat. Prop. & Cas. Ins. Co.*, 787 F.3d 296, 306 (5th Cir.

2015).

> "The key factor to determine if an interaction with an insurer is 'claims handling'
> is the status of the insured at the time of the interaction between the parties. If the
> individual is already covered ... the interactions between the insurer and insured ...
> are 'claims handling' subject to preemption."

*Spong v. Fid. Nat. Prop. & Cas. Ins. Co.*, 787 F.3d 296, 306 (5th Cir. 2015) (citations omitted);

*see also Grissom v. Liberty Mut. Fire Ins. Co.*, 678 F.3d 397, 401 (5th Cir. 2012) ("If the

individual is already covered and in the midst of a non-lapsed insurance policy, the interactions

between the insurer and insured, including renewals of insurance, are 'claims handling' subject

to preemption. … Grissom was insured by Liberty Mutual at the time of his interactions with

Liberty Mutual … Because Grissom's dispute with Liberty Mutual relates to his renewal of a

policy already in place—claims handling, not the initial procurement of the insurance policy—

*Campo* does not control and we hold that Grissom's state law claim is preempted.").

32.     The NFIA preempts the claims-handling-based, state-law causes of action and

claims alleged by Plaintiff against Wright.  *Spong*, 787 F.3d at 306; *Grissom*, 678 F.3d at 401.

Because the Plaintiff's claims against Wright are preempted by the NFIA, involve the

interpretation of federal statutes and regulations under the NFIP, and necessarily depend upon

the resolution of substantial questions of federal law, this Court also has original jurisdiction

pursuant to 28 U.S.C. § 1331.  *See David v. Blumberg & Assocs., Inc.*, No. CV 17-648-JWD-

EWD, 2018 WL 2424127, at *1 (M.D. La. May 11, 2018), *report and recommendation adopted,* No. CV 17-648-JWD-EWD, 2018 WL 2422747 (M.D. La. May 29, 2018) (holding that District Court had subject matter jurisdiction under 28 U.S.C. § 1331 over claims alleged against WYO Company and insurance agent because the claims were "claims handling-based" and "therefore preempted by federal law").

**D.    ALL PROCEDURAL REQUIREMENTS HAVE BEEN MET**

33.    28 U.S.C. § 1446(a) provides in part that "[a] defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal …, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action."   Pursuant thereto, Wright is filing this Notice of Removal in the United States District Court for the Eastern District of Texas, Beaumont Division, which is the district and division within which the State Court Action is pending.   Additionally, a copy of all process, pleadings, and orders served upon Wright are attached to this Notice of Removal.

34.    28 U.S.C. § 1446(b)(1) provides in part that "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, ..."   Wright's registered agent was served with the Citation and Plaintiff's First Amended Petition (attached hereto as **<u>Exhibit C</u>**) on October 17, 2019.   This Notice of Removal is timely filed within 30 days after the receipt by Wright, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, in accordance with 28 U.S.C. § 1446(b)(1).

35.     28 U.S.C. § 1446(b)(2)(A) provides that "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."  Co-defendant Texas Windstorm Insurance Association has consented to the removal of this action.  *See* **Exhibit D** (written consent to removal by counsel for Texas Windstorm Insurance Association).

36.     In accordance with 28 U.S.C. § 1446(d), promptly after the filing of this Notice of Removal, Wright is this day giving written notice thereof to all adverse parties, and also filing a copy of this Notice of Removal with the Clerk of the District Court of Jefferson County, Texas, 60th Judicial District.

37.     The United States District Court for the Eastern District of Texas, Beaumont Division, embraces the place where the State Court Action is pending.

III.

WHEREFORE, Wright hereby gives notice that this action has been removed from the District Court of Jefferson County, Texas, 60th Judicial District to the United States District Court for the Eastern District of Texas, Beaumont Division.

Dated:  November 12, 2019                    Respectfully submitted,

**BAKER & HOSTETLER, LLP**
/s/   *Bradley K. Jones*
Bradley K. Jones, Esq.
Texas State Bar No. 24060041
Ryan A. Walton
Texas State Bar No. 24105086
811 Main Street, Suite 1100
Houston, Texas 77002
Telephone: (713) 751-1600
Facsimile: (713) 751-1717
E-mail: bkjones@bakerlaw.com
E-mail: rwalton@bakerlaw.com
**COUNSEL FOR DEFENDANT, WRIGHT
NATIONAL FLOOD INSURANCE COMPANY**

**FREEBORN & PETERS LLP**
Alexander S. de Witt, Esq.
Virginia State Bar No. 42708
901 East Byrd Street, Suite 950
Richmond, VA 23219
Telephone: (804) 644-1300
Direct: (804) 799-7790
Facsimile: (804) 644-1354
E-mail: adewitt@freeborn.com
**COUNSEL FOR DEFENDANT, WRIGHT
NATIONAL FLOOD INSURANCE COMPANY**

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2019, a true copy of the foregoing NOTICE OF

REMOVAL was served upon the following attorneys of record, by first-class United States Mail

and by registered email:

Edward R. Batten, Esq.
Schneider Wallace Cottrell Konecky Wotkyns LLP
3700 Buffalo Speedway, Suite 960
Houston, Texas 77098
Email: ebatten@schneiderwallace.com
*Counsel for Plaintiff Earnest Shields*

Dale M. "Rett" Holidy, Esq.
Germer PLLC
2929 Allen Parkway, Suite 2900
Houston, Texas 77019
Email: rholidy@germer.com
*Counsel for Defendant Texas Windstorm Insurance Association*

*/s/ Bradley K. Jones*
Bradley K. Jones